# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-EC-01149-SCT

*DAVID L. ARCHIE*

*v.*

*ANTHONY "TONY" SMITH*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/13/2023 |
| TRIAL JUDGE: | HON. BARRY W. FORD |
| TRIAL COURT ATTORNEYS: | MATTHEW DANIEL WILSON |
| | BERNETTA MARKICE GARRETT-LEVISON |
| | DANNY E. CUPIT |
| | SAMUEL L. BEGLEY |
| | WARREN LOUIS MARTIN, JR. |
| | PIETER JOHN TEEUWISSEN |
| | LISA MISHUNE ROSS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MATTHEW DANIEL WILSON |
| ATTORNEY FOR APPELLEE: | WARREN LOUIS MARTIN, JR. |
| NATURE OF THE CASE | CIVIL - ELECTION CONTEST |
| DISPOSITION: | VACATED AND REMANDED - 09/12/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KING, P.J., COLEMAN AND BEAM, JJ.**

**KING, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     David Archie filed an election contest in Hinds County regarding the Hinds County Supervisor primary runoff election that occurred on August 8, 2023, alleging multiple election irregularities. The substance of the election contest is not at issue in this appeal. It is undisputed that the deadline for Archie to file a petition for judicial review was ten days after he had filed his contest with the Hinds County Democratic Executive Committee, it is

undisputed that the tenth day was September 7, 2023, and it is undisputed that Archie filed his petition for judicial review on September 8, 2023. The only issue on appeal is whether the circuit clerk's office was open or closed on September 7, 2023, because Archie's deadline is statutorily extended if the last day fell on a day on which either the courthouse or the circuit clerk's office was closed. The circuit court hearing in the case did not consider sufficient evidence to determine whether the circuit clerk's office was open or closed. Consequently, this Court vacates the circuit court's judgment and remands the case for a more thorough evidentiary hearing.

## FACTS AND PROCEDURAL HISTORY

¶2. On August 8, 2023, the Hinds County Democratic Executive Committee (HCDEC) held a primary runoff election for the Democratic Nominee for Hinds County, Mississippi, Supervisor District 2 between Archie and Anthony "Tony" Smith. Smith won the primary runoff election to become the Democratic Nominee for Hinds County, Mississippi, Supervisor District 2 by nearly two thousand votes. Archie requested a review of the election and determined that, in his opinion, election irregularities had occurred. He filed a contest petition with the HCDEC on August 28, 2023. The HCDEC set a hearing for September 9, 2023.

¶3. On September 8, 2023, eleven days after he had filed his contest petition with the HCDEC, Archie filed a Petition for Judicial Review of the election in Hinds County Circuit Court, naming as defendants the HCDEC, Jacqueline Amos, Sandra McCall, Smith, Toni Johnson, Election Systems & Software, and Hinds County Circuit Clerk Zack Wallace, as

2

well as several John Does. The petition was dated September 7, and it was also notarized on September 7. This Court appointed the Honorable Barry W. Ford to serve as special judge in the matter. Several defendants filed motions to dismiss as improper defendants, as well as a motion to dismiss based on lack of subject matter jurisdiction because Archie filed his petition outside the allowable time period.

¶4. On September 7, 2023, the tenth day after Archie had filed his contest petition with the HCDEC, Hinds County experienced a cyber attack, crippling county offices. While the Hinds County Courthouse was unlocked and available to the public, it is undisputed that the circuit clerk locked the doors to the Hinds County Circuit Clerk's Office to the public at some point around noon on September 7. Archie and two of his associates all submitted affidavits that state that the circuit clerk's office doors were locked, the lights were out at both entrances to the circuit clerk's office, and they saw no employees present in the office. One of Archie's associates claimed in his affidavit that he witnessed a UPS delivery person unable to deliver a package to the circuit clerk's office. Wallace's affidavit states that "The Circuit Clerk's Office locked its doors some time after noon on September 7, 2023." However, he maintains that the office was nonetheless "still open to conduct business, and the courthouse itself was still open." He states that on the afternoon of September 7, the clerk's office processed orders from two judges and filed a new civil complaint. The affidavit does not outline or describe the manner in which the new civil complaint was filed. But, it does state that "[e]ven when the Hinds County Circuit Clerk's office doors are locked, a drop basket is outside the locked doors." No details whatsoever are given about the "drop

3

basket." Thus, it is unknown whether the basket is secure, whether it is in an obvious place where the public might take notice, and whether it indicates that papers placed in the basket will be filed the same day.

¶5.    The hearing on the motion to dismiss occurred on September 28, 2023. The hearing consisted only of attorney arguments; no testimony was taken and no evidence was introduced. The trial court's findings rested solely on the pleadings, the four affidavits submitted with the briefs, the law, and the attorney arguments. The trial court granted the motion to dismiss, finding from the bench that the petition was not filed within the requisite ten days and "that the courthouse was open." The trial court's written final judgment confirmed that it was holding that the petition was untimely filed, and the trial court incorporated its bench ruling into the written order. Archie appeals. The sole issue on appeal is whether the clerk's office was open on September 7, 2023, which would render Archie's petition untimely, or closed on September 7, 2023, which would place Archie's petition within the gamut of Mississippi Code Section 1-3-67 (Rev. 2019) and render it timely.[1]

---

[1]Archie also argues that if the clerk's office is deemed to have been open for business while it was impeding public access, then his due process right to open courts was violated because the clerk created "unnecessary obstacles to judicial access." But it is clear that no absolute right of access to courts exists, only reasonable access and opportunity to be heard. ***Thomas v. Warden***, 999 So. 2d 842, 846 (Miss. 2008). Furthermore, it is obvious that a right to open courts "does not mean that the office of the clerk must be physically open at all hours or that the filing of papers can be effected by leaving them in a closed or vacant office." M.R.C.P. 77 advisory comm. n. Archie offers no compelling argument that the clerk's office being closed for five hours when it was *statutorily* required to be open violates his *constitutional* rights. An office is either open to the public or it is closed, in which case Section 1-3-67 protects access to courts with regard to deadlines. An office cannot be secretly open. So this Court declines to decide how many hours an office must be open; the Legislature has made that determination statutorily and added in statutory protections for when the offices are closed, and Archie does not argue that those determinations are

4

## ANALYSIS

¶6. Questions of law in an election contest are reviewed de novo. *Chandler v. McKee*, 202 So. 3d 1269, 1271 (Miss. 2016).

¶7. A petition for judicial review following the filing of an election contest with the county executive committee "must be filed within ten (10) days after any contest or complaint has been filed with an executive committee." Miss. Code Ann. § 23-15-927 (Rev. 2018). When computing time,

> [t]he last day of the period so computed shall be included unless it is a Saturday, a Sunday or a legal holiday, or any other day when the courthouse or the clerk's office is in fact closed, whether with or without legal authority, in which event the period runs until the end of the next day which is not a Saturday, a Sunday, a legal holiday, or any other day when the courthouse or the clerk's office is closed.

Miss. Code Ann. § 1-3-67 (Rev. 2019).[2] The circuit clerk's office is required to "be open for business on all business days from 8:00 a.m. to 5:00 p.m."[3] Miss. Code Ann. § 25-1-99 (Rev. 2018). Mississippi Rule of Civil Procedure 77 similarly requires "[t]he clerk's office with

---

constitutionally inadequate.

[2]Mississippi Rule of Civil Procedure 6(a) employs the same language. M.R.C.P. 6(a). While Mississippi Rule of Civil Procedure Rule 81(a)(4) provides that the Rules have "limited applicability" in election contests, which are governed by statutory procedures, when the controlling statutes are silent regarding a procedure, the Rules govern. M.R.C.P. 81 advisory comm. n.

[3]Some exceptions apply generally, but are not applicable in this case. § 25-1-99. For example, the board of supervisors has limited authority to close the clerk's office at noon on certain days or open it until noon on Saturdays, but such changes must be published. *Id.* The Hinds County Board of Supervisors made no such changes to the clerk's office hours.

the clerk or a deputy clerk in attendance shall be open during business hours on all days except Saturdays, Sundays, and legal holidays." M.R.C.P. 77(c).

¶8. The primary issue of disagreement between the parties is whether, on September 7, 2023, the Hinds County Clerk's Office was open or closed within the gamut of Section 1-3-67. The uncontested relevant facts are as follows: (1) the deadline for Archie to file his petition for judicial review was September 7, 2023, pursuant to Section 23-15-927; (2) Archie filed his petition for judicial review on September 8, 2023; (3) Section 1-3-67, which does not count any days the courthouse or circuit clerk's office is closed as the last day of a deadline, applies to Section 23-15-927; (4) Hinds County experienced a cyber attack on September 7, 2023; and (5) the Hinds County Circuit Clerk's Office doors were locked to the public on the afternoon of September 7, 2023. Thus, the question is whether the computation of the deadline pursuant to Section 1-3-67 of the ten day requirement in Section 23-15-927 places the tenth day on September 7 or September 8. The statutes provide no definition of open or closed, but common sense dictates that "open for business" certainly means that the office is accessible to the public to conduct business. For example, if a clerk goes to his office on Sunday to work while all doors are locked and the office is statutorily closed, the mere fact that the clerk is present and working on clerk's office business does not render the office "open for business." The law would still regard the office as "closed" for purposes of statute of limitations computation.

¶9. Archie argues that Section 1-3-67 applies to his case because the clerk's office was closed on the last day to file his petition for judicial review. He cites older cases that

6

determine what "open for business" means under insurance policies to support the notion that when the doors are locked and no one is present, it is physically impossible to conduct business and thus a place is closed. He compares these cases to the clerk's office doors being locked and, according to affidavits, no employees being apparently present. He points out that the clerk admits that the doors were locked, and that his affidavit makes no statement regarding whether anyone was present in the office. Archie further argues that affirming the trial court's decision would give clerks the ability to close their offices to the public while claiming they are open for business.

¶10. Smith argues that Section 1-3-67 does not apply because the clerk's office was indisputably open for part of the day on September 7, 2023, therefore September 7 was not a day on which the clerk's office was, in fact, closed. He claims that Section 1-3-67 only applies when it is impossible to file in any way on the terminal day, and that Archie could have filed his petition on the morning of September 7, 2023. Smith also alleges that Archie could have filed his petition on the afternoon of September 7 via means other than the clerk's office. Further, Smith argues that substantial evidence supports the trial court's finding that the clerk's office was open.

¶11. The Legislature has made the determination that sufficient access to a clerk's office is served by a clerk's office remaining open from 8:00 a.m. to 5:00 p.m., and thus, absent limited exceptions not applicable here, requires clerks' offices so to do. The public at large, including litigants, is entitled to rely on the hours during which the clerk's office is required by law to remain open, whether that be 8:00 a.m. to 5:00 p.m., or slightly adjusted hours as

7

published by the board of supervisors. The public is not required to anticipate an unlawful closure of the clerk's office when conducting business.

¶12. Smith argues that this Court should find that Archie filed out of time because he had Wallace's cell phone number and did not call it on September 7 to attempt to file the petition; nor did Archie attempt to locate a judge in the courthouse with whom to file the petition. But whether a courthouse or clerk's office is "open" or "closed" pursuant to statute does not hinge on, or indeed have anything to do with, whether the purported filer happens to have the circuit clerk's cell phone number. The purported filer and his or her actions are irrelevant to the question of whether the clerk's office is open or closed. Furthermore, the circuit court's factual finding offers no assistance in this determination. A review of the record reveals that, despite Smith's claims about its findings, the circuit court only found that the *courthouse* was open; it made absolutely no findings regarding the *clerk's office*. It was undisputed that the Hinds County Courthouse remained open on September 7. But Section 1-3-67 provides that the last day of a period is not counted when *either* the courthouse *or* the clerk's office is closed; thus, only one being closed is sufficient to extend a deadline. § 1-3-67. And the disputed fact was whether the clerk's office was open or closed on September 7. The circuit court made no findings on that disputed fact.

¶13. The evidence in the record before this Court is simply insufficient for any accurate factual determination regarding whether the clerk's office was open or closed. Archie certainly produced compelling evidence that the clerk's office was closed, alleging that it was locked and had the lights off and that no one appeared to be there. Wallace admits that the

8

doors were locked to the public, and his affidavit is silent on whether the lights were off or whether any employees were present in the office. *See* M.R.C.P. 77(c) (the clerk or deputy clerk must be present during business hours). The affidavit merely contains a conclusory statement that the office was "open," even while the doors were locked, with no indication regarding how the public might ascertain that the office was open for business or how the public could reasonably access the office to conduct business on that same day. It further mentions a basket that was outside the locked clerk's office doors without giving any description of the basket. It does not detail whether the basket made clear to the public that they can conduct business on the same day through the basket, or whether the basket is secure. Indeed, it is not guaranteed that the filing of papers may "be effected by leaving them in a closed or vacant office." M.R.C.P. 77 advisory comm. n. Without any of these facts, it is impossible to tell whether the clerk's office was actually open to the public for business after it was clearly established that the doors were, in fact, locked to the public. This Court makes no decision on whether the doors must be unlocked for a clerk's office to be considered open, but certainly the clerk's office must somehow be available for the public to conduct business during business hours on a certain day, whether that be through an obvious drop box or a clerk or deputy clerk's presence and accessibility, to be considered open on that day.

## CONCLUSION

¶14. Because the evidence is insufficient for an appropriate determination regarding whether the clerk's office was closed on September 7, and, therefore, whether Archie met

9

his filing deadline, and because the circuit court made no findings on that disputed issue, this Court vacates the trial court's order and remands the case for a more thorough evidentiary hearing on this issue.

¶15.   **VACATED AND REMANDED.**

      **RANDOLPH, C.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.  KITCHENS, P.J., NOT PARTICIPATING.**